THE STATE EX REL. WATTS, APPELLEE, *v.* SCHOTTENSTEIN
STORES CORPORATION ET AL., APPELLANTS.

[Cite as *State ex rel. Watts v. Schottenstein
Stores Corp.* (1993), 68 Ohio St.3d 118.]

(No. 92–2399—Submitted September 14, 1993—Decided December 29, 1993.)

*Larrimer & Larrimer* and *David Swanson,* for appellee.

*Porter, Wright, Morris & Arthur* and *Darrell R. Shepard,* for appellant Schottenstein Stores Corp.

*Lee I. Fisher,* Attorney General, and *William J. McDonald,* Assistant Attorney General, for appellant Industrial Commission.

*Per Curiam.*   R.C. 4123.56(B) provides:

"Where an employee * * * suffers a wage loss as a result of returning to employment other than his former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, he shall receive compensation at sixty-six and two-thirds of his weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks."

Supplementing the statute, Ohio Adm.Code 4121–3–32(D) reads:

"In injury claims in which the date of injury * * * is on or after August 22, 1986, the payment of compensation [f]or wage loss pursuant to division (B) of section 4123.56 of the Revised Code shall commence upon application with a finding of any of the following:

"(1) The employee, as a direct result of the allowed conditions in the claim, returns to employment other than his former position of employment and suffers a wage loss.

"(2) The employee returns to his former position but suffers a wage loss.

"(3) The employee, as a direct result of the allowed conditions in the claim, is unable to find work consistent with the employee's physical capabilities and suffers a wage loss."

A claim for wage loss compensation has two components—actual wage loss and causal relationship between the allowed condition and the wage loss. The commission's order is misleading because it states that claimant experienced no wage loss. The evidence, however, suggests otherwise. Appellants do not dispute claimant's assertion that she was unemployed from the date she was terminated through July 31, 1990. Appellants also have not challenged her claim that self-employment has been less lucrative than her position with Schottenstein. Thus, there is no real disagreement that after she was terminated claimant made less than she would have at her old job.

Closer examination suggests that the commission instead based its decision on a perceived lack of causal relationship between claimant's injury and reduced wages. The commission essentially ruled that "but for" her employment discharge, claimant would still be at Schottenstein with no diminution of earnings. This finding raises a question of first impression for our consideration: Does a claimant's discharge from his or her position of employment automatically preclude R.C. 4123.56(B) wage loss benefits?

Arguing in the affirmative, appellants rely on the voluntary employment separation principles that govern temporary total disability. Temporary total disability compensation has traditionally been denied to those who have voluntarily abandoned their former position of employment. See, *e.g., State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.* (1985), 29 Ohio App.3d 145, 29 OBR 162, 504 N.E.2d 451; *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533; *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678; *State ex rel. McGraw v. Indus. Comm.* (1990), 56 Ohio St.3d 137, 564 N.E.2d 695.

We agree that firing can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. See *Ashcraft.* We decline, however, to extend these voluntary abandonment principles to R.C. 4123.56(B) wage loss because wage loss is broader in scope than temporary total disability. As explained by a Georgia court in *United States Fid. & Guar. Ins. Co. v. Giles* (1986), 177 Ga.App. 684, 685, 340 S.E.2d 284, 285:

"It is not the ability to perform the particular job in which one was engaged at the time of injury which is the determining factor in a case such as this, but

rather whether the claimant's inability to find *any* work for which he is suited by training and experience is a result of the injury suffered." (Emphasis *sic.*)

In *Giles,* the claimant, an insurance claims adjuster, resumed his duties after injury, only to quit in favor of better work. He was later laid off and was unable to find another job, prompting his claim for wage loss compensation. His former employer challenged claimant's compensation eligibility, arguing that his inability to secure other claims adjuster work was due, not to the injury, but to economic conditions.

The Georgia Court of Appeals upheld the claimant's right to benefits. The court stressed claimant's construction experience, teaching degree and extensive coaching background, and held that "while [claimant's] inability to find work as a claims adjuster may not be related to his injury, his inability to find *other* work for which he is suited *is* related to his injury." (Emphasis *sic.*) *Id.,* 177 Ga.App. at 685, 340 S.E.2d at 285.

We find particularly persuasive the reasoning advanced by the Minnesota Supreme Court in *Marsolek v. George A. Hormel Co.* (1989), 438 N.W.2d 922. There, after his industrial injuries, the claimant returned to work and was assigned to light duty. Claimant's activities during a later strike, however, prompted his dismissal. Unable to find other employment, claimant sought compensation for lost wages.

The high court found that claimant's firing did not automatically foreclose wage loss compensation, starting its analysis "with the basic tenet that an employer is liable for the payment of compensation benefits * * * when an employee suffers a wage loss that is attributable to a work injury." *Id.* at 923.

The court concluded:

"[B]y focusing so much effort on the * * * effect of the misconduct, the parties' attention has been diverted from the essential purpose of the [Workers' Compensation] Act, * * * which is to compensate injured workers for a wage loss that is attributable to a work injury. Accordingly, for purposes of clarification, we now hold that a justifiable discharge for misconduct suspends an injured employee's right to wage loss benefits; but the suspension of entitlement to wage loss benefits will be lifted once it has become demonstrable that the employee's work-related disability is the cause of the employee's inability to find or hold new employment. Such a determination should be made upon consideration of the totality of the circumstances * * *." *Id.* at 924.

Ohio's workers' compensation system was created "[f]or the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment * * *." Section 35, Article II, Ohio Constitution. Like the court in *Marsolek,*

*supra,* we find that those purposes are not furthered by denying a claimant even the opportunity to show the potential impact on the claimant's ability to do other work. Accordingly, we hold that firing may, but does not automatically, bar wage loss compensation under R.C. 4123.56(B).

In this case, the commission did not evaluate the effect that claimant's injury may have had on her ability to get or keep other employment. For this reason, we affirm the judgment of the court of appeals and return the cause to the commission for further consideration and amended order.

*Judgment affirmed.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.